UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>D-1 SAJID HAKIM<br>D-2 SAKINA HAKIM<br>D-3 PAULA WILLIAMSON, M.D.<br>D-4 FARID AHMED<br><br>    Defendants.<br>_____/ | Case:2:13-cr-20347<br>Judge: Borman, Paul D.<br>MJ: Whalen, R. Steven<br>Filed: 05-07-2013 At 04:33 PM<br>INDI USA V. SEALED MATTER (DA)<br><br>VIO:   18 U.S.C. § 1349<br>         18 U.S.C. § 1347<br>         18 U.S.C. § 1035<br>         18 U.S.C. § 371<br>         18 U.S.C. § 982<br>         18 U.S.C. § 2 |

### INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

1.   The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.   Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

3.   The Medicare program included coverage under two primary components, hospital insurance (Part A) and medical insurance (Part B). Part A covered physical therapy, occupational therapy, and skilled nursing services if a facility was certified by CMS as meeting certain requirements. Part B of the Medicare Program covered the cost of physicians' services

and other ancillary services not covered by Part A. The physical therapy, occupational therapy, and other services at issue in this Indictment were covered by Part A and Part B.

4. National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan. Wisconsin Physicians Service was the CMS contracted carrier for Medicare Part B, which included home visits, in the state of Michigan. TrustSolutions, LLC, was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC.

5. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

6. Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

7. Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered, and

providers were required to maintain patient records to verify that the services were provided as described on the claim form.

8. To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered.

9. A home health agency was an entity that provided health services, including but not limited to skilled nursing, physical and occupational therapy, and speech pathology services to homebound patients.

### The Home Health Agency

10. AMB Healthcare, Inc. ("AMB"), was a Michigan corporation doing business at 30180 Orchard Lake Road, Suite 100, Farmington Hills, Michigan. In or around May 2010, the primary business location for AMB was changed to 28275 Orchard Lake Road, Suite 104, Farmington Hills, Michigan. AMB was a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology, and/or skilled nursing services to patients. AMB was a Medicare provider and submitted claims directly to Medicare.

### The Physician Businesses

11. Home Visiting Physicians was a Michigan corporation doing business as Home Physician Services, P.C. ("Home Physician Services"), at 17250 West 12 Mile Road, #109, Southfield, Michigan. Home Physician Services was a Medicare provider and submitted claims directly to Medicare.

12. House Calls Physicians, PLLC ("House Calls Physicians"), was a Michigan limited liability company doing business at 6842 Park Avenue, Allen Park, Michigan. House Calls Physicians was a Medicare provider and submitted claims directly to Medicare.

### The Defendants

13. SAJID HAKIM, a resident of Oakland County, Michigan, was an owner and controller of AMB.

14. SAKINA HAKIM, a resident of Oakland County, Michigan, was a licensed physician assistant employed at Home Physician Services and House Calls Physicians.

15. PAULA WILLIAMSON, M.D., a resident of Wayne County, Michigan, was a licensed physician employed at Home Physician Services.

16. FARID AHMED, a resident of Wayne County, Michigan, was an administrator and authorized official of AMB.

### COUNT 1
### (18 U.S.C. § 1349 – Health Care Fraud Conspiracy)

**D-1 SAJID HAKIM**
**D-2 SAKINA HAKIM**
**D-3 PAULA WILLIAMSON, M.D.**

17. Paragraphs 1 through 16 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

18. From in or around April 2008, and continuing through in or around November 2012, the exact dates being unknown to the Grand Jury, in Oakland County, in the Eastern District of Michigan, and elsewhere, the defendants, SAJID HAKIM, SAKINA HAKIM, and PAULA WILLIAMSON, M.D., did willfully and knowingly combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health

care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Conspiracy

19. It was the purpose of the conspiracy for defendants SAJID HAKIM, SAKINA HAKIM, and PAULA WILLIAMSON, M.D., and others to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare; (b) offering and paying kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for physical therapy and other services; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

20. SAJID HAKIM, with the assistance of co-conspirators, would incorporate AtHome Health Care, Inc., in or around August 2006. In or around December 2006, SAJID HAKIM and co-conspirators would change the name of AtHome Health Care, Inc., to AMB.

21. SAJID HAKIM would maintain a Medicare provider for AMB to submit claims to Medicare for the cost of physical therapy and other services that were medically unnecessary and were not provided.

22. SAJID HAKIM, SAKINA HAKIM, and co-conspirators would control the day-to-day operations of AMB and would assist PAULA WILLIAMSON, M.D., and other co-conspirators in referring patients to AMB for physical therapy and other services that were never provided and were medically unnecessary.

23. SAJID HAKIM and other co-conspirators would offer and provide kickbacks and bribes to beneficiary recruiters, who would themselves offer and provide kickbacks, bribes, and other inducements to Medicare beneficiaries who were purported patients of AMB. The Medicare beneficiaries would receive cash and other remuneration in exchange for their beneficiary information and signatures on documents making it appear that they had received the treatments being billed to Medicare by AMB, when in fact such treatments were not medically necessary and were not provided.

24. SAJID HAKIM and other co-conspirators would pay kickbacks and bribes to beneficiary recruiters for each patient they recruited through this kickback scheme.

25. PAULA WILLIAMSON, M.D., and other physicians would sign medical documentation ordering physical therapy and other services purportedly provided and billed to Medicare by AMB, which were not medically necessary and were not provided.

26. PAULA WILLIAMSON, M.D., SAKINA HAKIM, and other co-conspirators would fabricate and falsify and direct the fabrication and falsification of medical and billing documents to reflect or support purported physical therapy and other services billed to Medicare that were not medically necessary and were not provided. Those documents included home

health certifications and plans of care, therapy notes, evaluations, recertifications, discharges, and other records for therapy that AMB would bill to Medicare, making it appear that physical therapy and other services had been provided, when, in fact, they had not.

27. AMB would submit claims to Medicare seeking reimbursement for the cost of physical therapy and other services purportedly provided to Medicare beneficiaries by co-conspirators that were not, in fact, rendered.

28. SAJID HAKIM, SAKINA HAKIM, and PAULA WILLIAMSON, M.D., and others would cause AMB to submit claims to and receive from Medicare over $2.1 million for the cost of physical therapy and other services.

29. The defendants SAJID HAKIM, SAKINA HAKIM, and PAULA WILLIAMSON, M.D., would transfer and disburse, and cause the transfer and disbursement of, monies from the corporate accounts of AMB to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2–5
### (18 U.S.C. §§ 1347 and 2 – Health Care Fraud)

### D-1 SAJID HAKIM
### D-3 PAULA WILLIAMSON, M.D.

30. Paragraphs 1 through 16 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

31. On or about the dates enumerated below, in Oakland County, in the Eastern District of Michigan, and elsewhere, SAJID HAKIM and PAULA WILLIAMSON, M.D., in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code,

Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

32. It was the purpose of the scheme and artifice for the defendants SAJID HAKIM and PAULA WILLIAMSON, M.D., and their co-conspirators to unlawfully enrich themselves through the submission of false and fraudulent Medicare claims for home health services that were medically unnecessary and not provided.

### The Scheme and Artifice

33. Paragraphs 20 through 29 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

34. On or about the dates specified in each count below, in Oakland County, in the Eastern District of Michigan, and elsewhere, the defendants, SAJID HAKIM and PAULA WILLIAMSON, M.D., in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program:

| Count | Medicare Beneficiary | Approximate Dates of Service | Description of Item Billed | Company Billing | Approximate Amount Paid |
|---|---|---|---|---|---|
| 2 | M.B. | 03/16/2011–05/04/2011 | Physical Therapy, Social Work | AMB | $3,714.41 |
| 3 | J.H. | 03/16/2011–05/04/2011 | Physical Therapy | AMB | $3,714.41 |
| 4 | J.C. | 01/07/2012–03/01/2012 | Physical Therapy, Skilled Nursing | AMB | $3,948.28 |
| 5 | E.B. | 02/08/2012–04/04/2012 | Physical Therapy, Skilled Nursing, Skilled Services | AMB | $3,590.61 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 6–9
(18 U.S.C. §§ 1035 and 2 – False Statements)

### D-3 PAULA WILLIAMSON, M.D.

35. Paragraphs 1 through 16 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

36. On or about the dates specified as to each count below, in Oakland County, in the Eastern District of Michigan, and elsewhere, the defendant, PAULA WILLIAMSON, M.D., in connection with a health care benefit program and with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device a material fact, and make and use materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries:

| Count | Medicare Beneficiary | Approximate Date of Statement | Description of False Statement |
|---|---|---|---|
| 6 | M.B. | 04/26/2011 | Home Health Certification and Plan of Care |
| 7 | J.H. | 04/26/2011 | Home Health Certification and Plan of Care |
| 8 | J.C. | 02/27/2012 | Home Health Certification and Plan of Care |
| 9 | E.B. | 04/10/2012 | Home Health Certification and Plan of Care |

In violation of 18, United States Code, Sections 1035 and 2.

## COUNT 10
### (18 U.S.C. § 371 — Conspiracy)

### D-1 SAJID HAKIM
### D-4 FARID AHMED

37. Paragraphs 1 through 16 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

38. From in or around December 2009, and continuing through in or around May 2012, the exact dates being unknown to the Grand Jury, in Oakland County, in the Eastern District of Michigan, and elsewhere, defendants, SAJID HAKIM and FARID AHMED, and others did willfully and knowingly combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

(a) to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) by knowingly and willfully offering or paying any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b); and

(b) to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A) by knowingly and willfully soliciting or receiving any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

### Purpose of the Conspiracy

39. It was a purpose of the conspiracy for defendants SAJID HAKIM and FARID AHMED and others to unlawfully enrich themselves by offering, paying, soliciting, and receiving kickbacks and bribes in exchange for the use of Medicare numbers of Medicare beneficiaries brought into the scheme by patient recruiters.

### Manner and Means

The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among other things:

40. SAJID HAKIM and others would establish AMB in Farmington Hills, Michigan, for the purpose of billing Medicare for purportedly providing in-home physical therapy and other services to patients.

41. SAJID HAKIM, FARID AHMED, and others would enter into kickback arrangements with co-conspirators where the co-conspirators would identify, recruit, and pay Medicare beneficiaries whose information the co-conspirators would sell to SAJID HAKIM, FARID AHMED, and others.

42. Through cash and checks written from an AMB bank account and signed by SAJID HAKIM, SAJID HAKIM, FARID AHMED, and others would pay the co-conspirators in

exchange for referring Medicare beneficiaries, who in turn AMB would bill Medicare for purportedly providing physical therapy and other services.

43.    SAJID HAKIM and FARID AHMED would pay the co-conspirators at least $53,000 in exchange for Medicare beneficiary referrals. In exchange for the payments, SAJID HAKIM and FARID AHMED would receive Medicare beneficiary referrals from the co-conspirators over a period of at least two and a half years.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its purposes and objects, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, the following overt acts, among others:

44.    On or about December 23, 2009, a co-conspirator was paid $400 by check drawn from an AMB bank account and signed by SAJID HAKIM in exchange for Medicare beneficiary referrals.

45.    In or around September 2011, SAJID HAKIM and FARID AHMED met with a co-conspirator and agreed to pay the co-conspirator for recruiting Medicare beneficiaries and providing Medicare beneficiary information.

46.    On or about September 30, 2011, FARID AHMED paid a co-conspirator $1,800 by check drawn from an AMB bank account and signed by SAJID HAKIM in exchange for Medicare beneficiary referrals.

All in violation of Title 18, United States Code, Section 371.

**FORFEITURE ALLEGATIONS**
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;
18 U.S.C. § 982(a)(7) – Criminal Forfeiture)

47. The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981 and 982, and Title 28 United States Codes, Section 2461.

48. As a result of the violation of Title 18, United States Code, Section 1349, as set forth in this Indictment, defendants SAJID HAKIM, SAKINA HAKIM, and PAULA WILLIAMSON, M.D., shall forfeit to the United States any property, real or personal, that constitutes or is derived from any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

49. As a result of the violations of Title18, United States Code, Sections 1347, 2, 1035, and 371, as set forth in this Indictment, defendants SAJID HAKIM, SAKINA HAKIM, PAULA WILLIAMSON, M.D., and FARID AHMED shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7).

50. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of the defendants up to the value of the forfeitable property described above.

51.  Money Judgment: A sum equal to at least $2,114,555.20 in United States currency, or such amount as is proved at trial in this matter, representing the total amount of proceeds obtained as a result of the violations of 18 U.S.C. §§ 1349, 1347, 1035, and 371, and representing the total amount involved in the violations as alleged in this Indictment.

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth in Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

THIS IS A TRUE BILL.

s/GRAND JURY FOREPERSON
Grand Jury Foreperson

BARBARA L. MCQUADE
UNITED STATES ATTORNEY

s/WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
Wayne.Pratt@usdoj.gov

s/GEJAA T. GOBENA
GEJAA T. GOBENA
Deputy Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
(202) 305-1310
(313) 226-0831
gejaa.gobena@usdoj.gov

s/MATTHEW C. THUESEN
MATTHEW C. THUESEN
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
(202) 679-4187
(313) 226-0829
matthew.thuesen@usdoj.gov

Dated:  May 7, 2013

# ORIGINAL

| United States District Court<br>Eastern District of Michigan | Criminal Case Co[ver] | Case: 2:13-cr-20347<br>Judge: Borman, Paul D.<br>MJ: Whalen, R. Steven<br>Filed: 05-07-2013 At 04:33 PM<br>INDI USA V. SEALED MATTER (DA) |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to co[mplete it accuratel]y in all respects.

## Reassignment/Recusal Information
This matter was opened in the USAO prior to August 15, 2008   [ ]

## Companion Case Information

| | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)¹: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials:  MG |

Case Title: USA v. SAJID HAKIM ET AL.,

County where offense occurred: OAKLAND COUNTY

Check One:   ☒ Felony      ☐ Misdemeanor      ☐ Petty

   X  Indictment/____Information --- no prior complaint.
   ____Indictment/____Information --- based upon prior complaint [Case number: ]
   ____Indictment/____Information --- based upon LCrR 57.10 (d) [Complete Superseding section below].

## Superseding Case Information

Superseding to Case No: _____   Judge: _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

**Defendant name**      **Charges**      **Prior Complaint (if applicable)**

---

Please take notice that the below listed Trial Attorney is the attorney of record for the above captioned case.

May 7, 2013
Date

*/s/ Matthew C. Thuesen*
MATTHEW C. THUESEN
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (313) 226-0829 (Detroit)
            (202) 679-4187 (DC)
Fax:     (313) 226-2621
E-Mail address: Matthew.Thuesen@usdoj.gov
Attorney Bar #:  989946 (DC)

---

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09